Hazel G. QUICK *v.* Charles WOODY, et al.

88-39                                                    747 S.W.2d 108

Supreme Court of Arkansas
Opinion delivered April 4, 1988

*Barron & Coleman, P.A.*, by: *Keith I. Billingsley*, for appellant.

*Mitchell, Williams, Selig & Tucker*, by: *John C. Lessell*, for appellees.

JACK HOLT, JR., Chief Justice. This case involves the

interpretation of Ark. Code Ann. § 23-42-106(c) (1987), formerly Ark. Stat. Ann. § 67-1256(b) (Repl. 1980), which subjects an agent who materially aids in the sale of unregistered, nonexempted securities to civil liability. Jurisdiction is pursuant to Ark. Sup. Ct. R. 29(1)(c).

On March 6, 1984, the appellees, Charles Woody, Charles Edward Woody, Larry Joe Woody, Ricky Don Woody, William F. Woody, Eddie Jones, and Lucille Shelton filed suit against Quick Oil Company; Transworld Petroleum, Inc., a subsidiary of Quick Oil Company; J. Gary Nolan Quick II, owner and operator of both companies; and Hazel G. Quick, Gary Quick's mother and the sole appellant in this appeal, seeking rescission of the sale and purchase of securities representing various interests in three oil and gas wells, recovery of their invested monies, interest, costs, and reasonable attorneys' fees on the basis that the securities sold were not registered in Arkansas as required by the Arkansas Securities Act, Ark. Code Ann. §§ 23-42-101—23-42-508 (1987), formerly Ark. Stat. Ann. §§ 67-1235—67-1264.14 (Repl. 1980). A consent judgment was entered against all defendants except Hazel Quick for $33,810.00, plus interest, costs, and attorneys' fees.

Subsequently, the appellees proceeded to trial against the remaining defendant, Hazel Quick. The trial court held that she, acting as an agent of the defendants, materially aided in the sale of unregistered securities to the appellees. The trial court found for the plaintiff-appellees and awarded $14,490.00 collectively to Charles Edward Woody, Larry Joe Woody, Ricky Don Woody, and William F. Woody; $4,830.00 to Charles Woody; $4,830.00 to Eddie Jones; and $4,830.00 to Lucille Shelton; plus interest, but denied their request for costs and attorneys' fees. In addition, it denied Charles Woody relief with respect to securities he purchased on December 20, 1980. Hazel Quick filed a motion for a new trial, which was denied. She now appeals. We agree with the trial court's holding and affirm.

On cross-appeal the appellees challenge the portions of the trial court's judgment that (a) deny Charles Woody relief with respect to securities purchased on December 20, 1980, and (b) deny the appellees' request for costs and attorneys' fees. We also affirm the trial court on the cross-appeal.

The material facts in this case are as follows: In June of 1980, Gary Quick, an Oklahoma resident, Quick Oil Co., and Transworld Petroleum, Inc. began offering for sale fractional undivided working interests in an oil and gas well project in Navarro County, Texas. The appellees, Arkansas residents and eventual investors in the project, initially obtained information about the investment opportunity either at an August 1980 promotional meeting in Little Rock at which Hazel Quick, also an Arkansas resident, participated or by virtue of her direct or indirect dissemination of information about the project. At trial both Hazel and Gary Quick disputed the fact that the meeting took place in August contending it was held in November, after the purchase of securities by the appellees, to answer questions concerning the venture. The record does reflect that the appellees sent their checks to Quick Oil in August 1980 and that they have not received any return on their investments.

Karen Woody, wife of appellee Larry Joe Woody, testified that the promotional meeting was held at Jan and Charles Edward Woody's house in August of 1980 to discuss the oil and gas venture with potential investors. According to Karen Woody, all of the named plaintiffs-appellees were present at the meeting. (Eddie Jones later testified that he was not present.) She also stated that during Gary Quick's presentation, Hazel Quick interrupted him numerous times with comments about what to expect in investing and also made the statement that "if we [the appellees] knew of anyone that was interested, that they [Hazel and Gary] were still looking for investors and to be sure and let them know." Additionally, Karen Woody asserted that Hazel Quick handed out business cards to the appellees while, at the same time, stating that if they came across anyone interested in investing, let her know. A business card that stated "TransDelta Gas and Oil Company, Inc. [Hazel Quick's son-in-law's company], Hazel Quick Arkansas Regional Manager," was later admitted at trial to impeach Hazel Quick's testimony that she had no knowledge of oil and gas affairs. Karen Woody and Larry Joe Woody, her husband, sent a check to Quick Oil on August 26, 1980.

Lucille Shelton, Hazel Quick's cousin and Jan Woody's mother, testified at trial that Hazel Quick met with her at Shelton's office concerning the oil and gas investment, en-

couraged her to invest, and sent or gave her a prospectus explaining the investment, which had a written notation on its face, "Remit to Hazel Quick." Shelton also attended the meeting held at her daughter's house, and sent her check to Quick Oil on August 26, 1980. Shelton further testified that it was Hazel who must have instigated communications about the meeting. However, Hazel Quick denied that she arranged the meeting.

Eddie Jones testified that while he and his wife were attending a church reunion in August 1980, Hazel Quick talked to him concerning the investment and accepted his check, upon which she filled in Quick Oil as payee. Quick Oil later received this check. He also stated that Hazel Quick was the only person he talked to directly about the investment and that she indicated to him that she was handling Gary Quick's interest in Arkansas. Laverne Jones, Eddie Jones' wife and Hazel Quick's cousin, testified that Hazel Quick convinced her husband to invest.

Charles Woody testified that he made his initial purchase of securities after attending the meeting and that he did not talk to Gary Quick before making his investment. However, he did communicate with Gary Quick in December of 1980, after which he purchased additional securities.

Gary Quick testified that he sold the appellees securities through telephone communications before the meeting. However, both Charles Woody and Eddie Jones asserted that they had no telephone communications with Gary prior to investing in August of 1980.

Hazel Quick contends that the trial court erred in finding that she participated as an agent of the seller and materially aided in the sale of the securities. We disagree.

This matter was tried before the court without benefit of a jury. In such cases, the findings of the trial court shall not be set aside unless clearly against the preponderance of the evidence. *Burdette* v. *Madison*, 290 Ark. 315, 719 S.W.2d 418 (1986). Furthermore, we give due regard to the trial court's superior ability to determine the credibility of the witnesses and the weight to be given their testimony. *Id.*

Ark. Code Ann. § 23-42-106(c) (1987) provides in pertinent part as follows:

[E]very broker-dealer or agent who materially aids in the sale [of an unregistered, nonexempted security] are [sic] liable jointly and severally with, and to the same extent as the seller or purchaser [This liability is for the consideration that the purchaser paid for the security, together with interest at six percent (6%) per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security and any income received on it, or for damages if he no longer owns the security. Ark. Code Ann. § 23-42-106(a)(1).], unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

Ark. Code Ann. § 23-42-102(2) (Supp. 1987), formerly Ark. Stat. Ann. § 67-1247(b) (Repl. 1980), defines "agent" as "any individual, other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect the purchases or sales of securities." Ark. Code Ann. § 23-42-102(8)(D) (Supp. 1987), formerly Ark. Stat. Ann. § 67-1247(g) (Repl. 1980), states that "[w]ith respect to fractional undivided interests in oil, gas, or other mineral rights, the term 'issuer' means the owner of the right or of any whole or fractional interest in the right who creates fractional interests therein for the purpose of the offering."

■ There are no Arkansas cases interpreting the term "agent" under §§ 23-42-102(2) and 23-42-106(c). We must, therefore, examine Hazel Quick's conduct in light of a plain reading of the language of the statutes. There is evidence in the record that Hazel Quick aided in arranging a meeting of potential investors. As previously noted in Karen Woody's testimony, Hazel Quick actively participated in the meeting by interrupting Gary with comments about what to expect in investing, handing out business cards to the appellees, and stating to them that if they knew of anyone interested in investing, to let them [Hazel and Gary] know. (Hazel Quick later denied that she had any knowledge of securities.)

Hazel Quick also promoted the sale of her son's securities in her direct dealings with Eddie Jones. After talking with Mr. Jones about the investment opportunity at a church reunion, Hazel Quick accepted a check that he wrote for his interest in the project, filled in Quick Oil as payee, and forwarded the check to Quick Oil. As noted above, Mr. Jones also testified that Hazel Quick indicated to him that she was handling Gary Quick's interest in Arkansas.

On the basis of the foregoing facts, we conclude that Hazel Quick represented an issuer (Gary Quick, Quick Oil Co., or Transworld Petroleum, Inc.) in effecting or attempting to effect purchases or sales of securities to the appellees and therefore is an agent under the Arkansas Securities Act. Although Gary Quick testified he neither employed nor asked her to solicit purchasers, it is apparent that he was aware of her promotional activities and did not attempt to curtail them. Furthermore, he acquiesced in or ratified her conduct by accepting the check from Eddie Jones.

Having found that Hazel Quick was an agent, we must determine if she materially aided in the sale of unregistered securities for liability to attach. The language of § 23-42-106(c), "materially aids in the sale of securities," is not defined in the Arkansas Securities Act. However, in *Titan Oil and Gas* v. *Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974), we did interpret this language, which was then found in Ark. Stat. Ann. § 67-1256(b) (Repl. 1966). Although neither the appellant nor the appellee cited this case, its treatment of the statutory language is essential to our present analysis.

In *Titan Oil*, a representative of a company offering securities in an oil and gas project gave two investors a prospectus concerning the project and invited them to a meeting in which individuals other than the representative spoke and presented investment material. We held that the trial court's finding that the representative did not materially aid in the sale of securities was not clearly against the preponderance of the evidence.

In examining Hazel Quick's participation in the sale of securities to the appellees in light of *Titan Oil*, we quickly find that her activities fully support the trial court's finding that she materially aided in the sale of her son's securities. Hazel Quick

convinced Eddie Jones to invest in the venture at a church reunion, accepted his check, upon which she filled in Quick Oil as payee, and forwarded it to Quick Oil. Hazel Quick met with Lucille Shelton at Shelton's office to discuss the investment, encouraged her to invest, and sent or gave her a prospectus explaining the investment, which had a written notation on its face, "Remit to Hazel Quick." According to Karen Woody, appellees Lucille Shelton, Charles Woody, Larry Joe Woody, Charles Edward Woody, Ricky Don Woody, and William F. Woody all attended the investment meeting, arranged at least in part by Hazel Quick, at which Hazel Quick actively participated by telling the investors what to expect in investing, handing out business cards to them, and stating that if they knew of anyone interested in investing, to let them [Hazel and Gary] know. Based upon these facts, we cannot say that the trial court's finding was clearly against the preponderance of the evidence. She is liable to the appellees for a refund of their investments plus interest.

In affirming the trial court, we should note that § 23-42-106(c) allows an agent who has materially aided in the sale of unregistered, nonexempted securities to avoid liability if he proves that "he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." In the instant case, Hazel Quick did not specifically contend either below or on appeal that she did not know, and in the exercise of reasonable care could not have known, that the securities were unregistered and nonexempted. Accordingly, we do not address this issue. *See Boatman v. Dawkins*, 294 Ark. 421, 743 S.W.2d 800 (1988).

On cross-appeal, the appellees contend that the trial court erred in failing to award Charles Woody relief for the additional securities he purchased December 20, 1980, through contact with Gary Quick. We disagree.

Granted, it is doubtful that Charles Woody would have known of this investment opportunity absent Hazel Quick's initial dissemination of information and encouragement to invest. However, there is no indication that Hazel Quick encouraged or solicited this second investment, nor was it purchased as a result of her influence. For this reason, he is not entitled to relief.

Appellees also cross-appeal the trial court's refusal to

award them attorneys' fees and costs. As noted above, Ark. Code Ann. § 23-42-106(a)(1) provides that any person who offers or sells unregistered, nonexempted securities is liable to the purchaser for costs and reasonable attorneys' fees in addition to the consideration paid for the securities and interest. The appellees included a prayer for costs and attorneys' fees in their complaint, but did not put on evidence at trial to establish the amount of such fees. The trial court denied their request on the ground that the appellees failed to sufficiently establish the fees and costs. Based upon the trial court's finding, we conclude that it did not abuse its discretion in this matter. It was the appellees' obligation to put on testimony as to costs and reasonable attorneys' fees.

Affirmed on appeal and cross-appeal.